UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                         :

TROY MANNING,                      :
                                         :

                  Petitioner,     :        12 Civ. 3706 (TPG)
                                         :

         – against –         :        **<u>OPINION</u>**
                                       :

DAVID ROCK, SUPERINTENDENT,   :
UPSTATE CORRECTIONAL FACILITY,  :
                                         :

                  Respondent.   :
------------------------------------------------x

On March 10, 2009, a New York County jury found Troy Manning guilty of both possession and sale of cocaine and marijuana.  The trial court sentenced Manning, as a second felony drug offender, to forty-two years in prison.  The New York State Appellate Division, First Department subsequently reduced Manning's aggregate sentence to eighteen years, but otherwise affirmed his conviction.

Manning now petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that the trial court deprived him of his Sixth Amendment right to a public trial.  Specifically, Manning contends that the trial judge did not make sufficient factual findings to support a decision to close the courtroom during the testimony of an undercover police officer.

The court denies Manning's petition.

1

**FACTUAL BACKGROUND AND PROCEEDINGS BELOW**

The Illegal Transactions

Between July 4, 2007 and October 16, 2007, the New York Police Department ("NYPD") Manhattan North Narcotics Bureau conducted an investigation into cocaine and marijuana distribution at 141st Street, between Lenox Avenue and Seventh Avenue in Manhattan.  As part of the operation, an undercover narcotics detective ("UC-C0003") made multiple purchases of narcotics from Manning.  These transactions ultimately led to trial on charges of selling and possessing cocaine and marijuana.

The State Trial and Appellate Proceedings

Prior to trial, the government moved for a limited closure of the courtroom during the testimony of the undercover officer. Manning opposed the government's request.

On March 4, 2009, the trial judge held a hearing pursuant to *People v. Hinton*, 31 N.Y.2d 71 (1972), to determine whether to close the courtroom during the testimony of the undercover officer.  At the *Hinton* hearing, the undercover officer was the only witness to testify.   The officer had worked undercover for 13 of his 15 years with the NYPD, and had worked undercover for the three years preceding the trial in an area near the courtroom in question.  He explained that he continued to work undercover in New York City, and feared that if forced to testify

2

publically, he would "blow [his] cover." 3/4/2009 Tr. at 6. He testified about the precautions he undertook to conceal his identity, and explained that certain investigations he conducted resulted in "los[t] subjects" or "unidentified suspects" where the alleged narcotics seller remained at large. *Id.* at 6-10.

After the officer finished testifying, the parties made arguments on the motion to the trial judge. In his argument, Manning's counsel put forth a general objection to the closure of the courtroom:

> I can sum up real briefly. I'm going to rely on the record for the most part with respect to the interest raised and the purpose behind the two questions I asked or the rather few questions, the two categories of questions. The officer doesn't know if Mr. Manning has any contact at all to any of the people that he's ever dealt with on the street, therefore, it doesn't seem to be important or necessary to keep the courtroom closed in this particular case because there is no perceived connection between Mr. Manning or anybody else that this officer has dealt with that would put this officer in any kind of risk after he leaves here today so I would object to closing the courtroom.

*Id.* at 12-13.

After further argument from the government, the trial judge ruled from the bench that the courtroom would remain closed to the public during the testimony of the undercover officer. The trial judge found that, although the facts did not support a finding of a "specific threat" against the undercover officer, requiring the officer to testify openly could subject him to more "general threats" and compromise his ability to perform future undercover work. *Id.* at 15-19.

3

In so ruling, the trial judge made multiple findings of fact about ways the undercover officer could encounter someone who might identify him if testified in open court. First, the courtroom is located close to programs that serve as alternatives to incarceration for drug offenders— some of whom may have interacted with the undercover officer during his undercover operations. *Id.* at 16. Similarly, the trial judge explained that defendants who had previously failed to appear were routinely returned to his courtroom pursuant to outstanding bench warrants— without prior notice to the judge or his staff. *Id.* at 16-17. The trial judge also noted that the Probation Department is located in the courthouse, and that "the identity of the undercover visually will be engrained forever" in the minds of individuals previously convicted based on buy-and-bust operations conducted by the undercover officer. *Id.* at 17-18. The court concluded: "[H]e is identifiable and the City of New York and he, apparently, have a mutual interest in him continuing to be an undercover officer and for that reason plus the general safety concerns, the courtroom will be closed to the general public." *Id.* at 19.

The trial judge thus ordered the courtroom closed to the general public during the officer's testimony, and allowed the officer to use his shield number for purposes of identification. The trial judge qualified his ruling by stating: "If anybody identifies somebody from Mr. Manning's family or otherwise that they wish me to consider with respect to being a

potential attendee, please do that when that information surfaces." *Id.* at 19.

Manning's counsel did not object to the trial judge's *Hinton* ruling after it was issued from the bench.

On March 10, 2009, a jury convicted Manning on all counts. Judgment was entered on April 7, 2009, and the court sentenced Manning to an aggregate of forty-two years in prison, followed by five years of post-release supervision.

Manning then appealed to the Appellate Division, First Department, which reduced his aggregate sentence to eighteen years, but otherwise unanimously affirmed the conviction. The Appellate Division found that Manning did not preserve his constitutional claim to a public trial, because he failed to comply with New York's preservation rule by making a contemporaneous and specific objection to the adequacy of the judge's factual findings at the *Hinton* hearing.[1]  *People v. Manning*, 78 A.D.3d 585, 586 (1st Dep't 2010).  The Appellate Division held that

---

[1] Under New York's preservation (or "contemporaneous objection") rule, a party fails to preserve an issue for appeal if he or she does not "object to what he or she believes is a legal error in a trial court's ruling or instruction 'at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'  Where a party fails to lodge such a contemporaneous objection, the issue is unpreserved for appeal because of the party's procedural default."  *Gutierrez v. Smith,* 702 F.3d 103, 110 (2d Cir. 2012) (*quoting* C.P.L. § 470.05).  The rule requires, "at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (internal citations omitted).

although Manning had "preserved his general claim that the courtroom should not have been closed, he did not preserve his specific complaint that the court failed to set forth adequate findings of facts to justify closure." *Id.* The Appellate Division went on to explain that "[a] separate contemporaneous objection was necessary because a timely objection would have permitted the court to rectify the situation instantly by making express findings." *Id.* (*citing People v. Doster*, 13 A.D.3d 114, 115 (1st Dep't 2004)). Finally, "[a]s an alternative holding," the Appellate Division found "that the court's ruling . . . was specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.*

The New York Court of Appeals subsequently denied Manning's application for leave to appeal, and the United States Supreme Court denied his petition for a writ of certiorari. See *Manning*, 78 A.D.3d at 585, *lv. denied*, 16 N.Y.3d 861, *cert. denied sub nom., Manning v. New York*, 132 S.Ct. 268 (2011). Manning is presently incarcerated pursuant to his judgment of conviction and, through counsel, filed this petition for a writ of habeas corpus on May 9, 2012.

Timeliness and Exhaustion

A habeas petitioner has one year from the date that his conviction becomes final to file his petition for habeas relief. 28 U.S.C. § 2244(d)(1). The Supreme Court denied Manning's request for a writ of certiorari on

October 3, 2011, and he filed his petition on May 9, 2012. Thus, his petition is timely. Additionally, Manning previously alleged the same constitutional claims that he raises in the instant petition in his state court appeals before the Appellate Division and the Court of Appeals. Since Manning has exhausted his remedies in state court, his petition is properly before this court.

## DISCUSSION

Manning claims, as he did on direct appeal, that the trial court did not support its partial closure order with adequate factual findings, thus depriving him of his constitutional right to a public trial. The court, however, finds that Manning procedurally defaulted on his constitutional claim.

Federal courts typically do not review a habeas petitioner's federal claim when the state court has determined that petitioner failed to meet a state procedural requirement. *Whitley*, 642 F.3d at 285 (*citing Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). Before denying review, a federal court must be satisfied that the state law ground on which the state court relied "is independent of the federal question and adequate to support the judgment." *Id.*; *see also Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999).

Given the Appellate Division's holding of a procedural default, this court is foreclosed from considering the merits of Manning's petition.

7

Federal courts in this Circuit have repeatedly recognized New York's contemporaneous objection rule as an independent and adequate state-law ground to deny habeas review.  *See, e.g., Downs v. Lape*, 657 F.3d 97, 102-104 (2d Cir. 2011) (petitioner's failure to "preserve his Sixth Amendment claim for appellate review constitutes a state ground that is indisputably independent of the public trial right itself"); *Kozlowski v. Hulihan*, 511 F. App'x 21, 25-26 (2d Cir. 2013) (because "the contemporaneous objection rule is firmly established and regularly followed, its application ordinarily constitutes an adequate state-law ground for barring federal habeas review") (internal citations omitted); *Gutierrez,* 702 F.3d at 110 ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with such a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.").

Nor will the court find that these facts present the type of "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Kozlowski*, 511 F. App'x at 25-26 (*citing Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).  This is particularly so because the contemporaneous objection rule has been upheld as a procedural bar to *Hinton*-based habeas claims similar to those brought

8

by Manning in his petition. *See, e.g., Downs*, 657 F.3d. at 104-108 (holding that state appellate court's determination that petitioner failed to preserve Sixth Amendment public-trial claim for appellate review by neglecting to make contemporaneous objection to trial court's removal of petitioner's brother from courtroom was not "exorbitant" misapplication of the firmly established contemporaneous objection rule, thus precluding federal habeas review); *Garcia*, 188 F.3d at 82 (holding that where, as here, petitioner's counsel in a buy-and-bust trial posed only general objections to a courtroom closure before a *Hinton* ruling was made, the Sixth Amendment claim was unpreserved, because a "contrary holding would only encourage the kind of sandbagging that procedural forfeiture rules reasonably discourage") (internal citations omitted).

In failing to comply with New York's contemporaneous objection rule, Manning neglected to preserve his objection to the trial judge's decision.     Accordingly, Manning procedurally defaulted on his constitutional claims, and this court declines to consider the merits of his petition.

## **CONCLUSION**

For the reasons discussed above, Manning's petition for a writ of habeas corpus is denied.

9

SO ORDERED.

Dated:  New York, New York
        December 5, 2014

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED: 12 / 5 / 14